UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIUM MERRITT RUTH, personal
representative of the ESTATE OF
SIDNEY GURLY,

        Plaintiff,                  Case No. 2:12-cv-15251

v.                                Hon. Patrick J. Duggan

MICHIGAN DEPARTMENT OF      Magistrate Judge Laurie J. Michelson
CORRECTIONS, GUS HARRISON
CORRECTIONAL FACILITY, PAUL
KLEE, Warden of Gus Harrison
Correctional Facility, OFFICER LATTA,
ANIL PRASAD, M.D., ROSILYN
JINDAHL, P.A., SAVITHIV KAKAN,
P.A., DANIEL DUCATT, M.D., and
nurses PAULA MEYER, KIMBERLY
MCGUIRE, BETH FRITZ, and JAMES
MACNAMARA,

        Defendants.
_____/

## OPINION AND ORDER

      This action, initiated by Marium Merritt Ruth ("Plaintiff") as personal

representative of the estate of Sidney Gurly ("Gurly"), arises from events

transpiring while Gurly was an inmate at the Gus Harrison Correctional Facility

("GHCF").  Plaintiff's Amended Complaint alleges that Gurly became ill after

consuming a prison meal, that he repeatedly sought medical treatment, that the

treatment provided was inadequate, and that he was ultimately found dead in his

jail cell.  Plaintiff, filing suit under 42 U.S.C. § 1983 and seeking attorney's fees

pursuant to 42 U.S.C. § 1988, contends that Defendants – the Michigan

Department of Corrections ("MDOC"), GHCF, and various GHCF personnel

(collectively, the "MDOC Defendants") – violated Gurly's Fourth, Eighth, and

Fourteenth Amendment rights.  Plaintiff's Amended Complaint also contains two

counts arising under the laws of the State of Michigan.  Presently before the Court

is the MDOC Defendants' Motion to Dismiss filed pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Having determined that oral argument would not

significantly aid the decisional process, the Court dispensed with oral argument

pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons

stated herein, the Court grants the MDOC Defendants' pending motion to dismiss

and dismisses Plaintiff's Amended Complaint without prejudice.

The Court also uses this occasion to *sua sponte* reconsider a prior Opinion

and Order issued in connection with the instant action.  That Opinion and Order,

issued on July 24, 2013, dismissed Plaintiff's Amended Complaint against

Defendants Rosilyn Jindahl, Savithiv Kakan, and Anil Prasad (the "Non-MDOC

Defendants") with prejudice.[1]  Upon reconsideration of the facts as alleged in the

---

[1] The Court notes that the Non-MDOC Defendants' filings with this Court provide the names "Rosilyn Jindal" and "Savithri Kakani."  Unless quoting from a document filed by these Defendants, the Court uses the names as they appear on the Court's Electronic Case Filing system and intends no disrespect by using the names as furnished by Plaintiff.

Amended Complaint, the Court vacates its July 24, 2013 Opinion and Order to the extent that it (1) denied Plaintiff an opportunity to amend the pleadings and (2) dismissed Plaintiff's Amended Complaint with prejudice.  As explained herein, the Court will permit Plaintiff to file a second amended complaint.

## I.   BACKGROUND

### A.   Factual Allegations Concerning Gurly's Death

In 2009, Plaintiff's decedent Sidney Gurly was incarcerated at the Gus Harrison Correctional Facility ("GHCF") located in Adrian, Michigan.  (Am. Compl. ¶¶ 33, 1, ECF No. 18.)  Plaintiff alleges that after eating a meal at GHCF, Gurly began "feeling ill[,] was not able to pass bowels[, and] began experiencing piercing abdominal pain which caused him to defecate, vomit and urinate blood." (*Id.* at ¶¶ 35-36.)  Gurly, believing that he had food poisoning, "notified various unit officers that he required immediate medical attention[,]" but that these unit officers "instructed him to wait two or three days before he could seek medical attention from the [] Healthcare facility."  (*Id.* at ¶¶ 37-38.)

Gurly visited the healthcare facility on August 3, 2011, and "healthcare staff, without an examination, prescribed him cholesterol medicine[.]"  (*Id.* at ¶ 39.) This medication only exacerbated Gurly's pain, so he once again sought medical attention.  (*Id.* at ¶ 40.)  Gurly's condition left him in a weakened state, so much so that "other inmates had to assist him walking to the Healthcare facility."  (*Id.* at ¶

41.)  Although unclear when Gurly returned to the healthcare facility, "the
healthcare staff and Defendant GH[CF] failed and/or refused to properly medically
treat Plaintiff-Decedent but instead, told him to return to his cell and ordered" that
he "stay in bed."  (*Id.* at ¶ 42.)

     After continuing to experience pain, Gurly "notified other inmates and
Defendants that he was peeing blood, could no longer stand straight, and that
despite his requests for medical attention, the Defendants refused to adequately
treat him."  (*Id.* at ¶ 43.)  At this point, "Gurly's medical needs were so apparent
that other inmates . . . notified the defendants of Gurly's noticeably declining
health[;]" the inmates' efforts were to no avail.  (*Id.* at ¶ 45 (capital lettering
removed).)  Gurly "wrote several medical request forms ('kites') and complaints
stating that his abdominal pain had not abated and that he needed extensive
medical treatment; however, the Defendants failed and refused to provide adequate
medical treatment."  (*Id.* at ¶ 46.)  In the early morning hours of August 6, 2012,
GHCF staff found Gurly deceased in his cell.  (*Id.* at ¶ 47; Defs.' Answer to Pl.'s
Am. Compl. ¶ 47.[2])

**B.      Institution of Legal Proceedings**

---

    [2] In the Answer to Plaintiff's Amended Complaint, the MDOC Defendants
indicate that Gurly was seen by medical staff on August 5, 2012.  (MDOC Defs.'
Answer to Pl.'s Am. Compl. ¶ 42, ECF No. 28.)

On the basis of the foregoing allegations, Plaintiff commenced this action by filing a two-count complaint with this Court on November 29, 2012. (Compl., ECF No. 1.) This original complaint named MDOC, GHCF, GHCF Warden Paul Klee, Corrections Officer Latta, and seven John Does as defendants. During a telephonic conference with Magistrate Judge Laurie J. Michelson, the served defendants agreed to provide certain documentation to Plaintiff such that the John Does could be identified and further agreed that Plaintiff could file an amended complaint. An Order memorializing this conversation was entered into the Court's electronic case management system. (3/7/13 Order, ECF No. 16.)

Plaintiff's Amended Complaint, filed on April 25, 2013, identifies the John Doe defendants and includes three counts: Count I – "Violation of Civil Rights Pursuant to the Fourth, Eighth and Fourteenth Amendment[s], 42 U.S.C. [§§] 1983 [and] 1988;" Count II – "Gross Negligence;" and Count III – "Acting in Concert." (Am. Compl., ECF No. 18.) The latter two counts are creatures of state law.

## C.    Post-Complaint Procedural Matters

On May 15, 2013, newly-added Defendants Rosilyn Jindahl, Savithiv Kakan, and Anil Prasad (the "Non-MDOC Defendants") filed a motion to dismiss, which this Court granted in an Opinion and Order dated July 24, 2013. *Ruth v. Mich. Dep't of Corrs.*, No. 12-15251, 2013 U.S. Dist. LEXIS 103175 (E.D. Mich.

July 24, 2013) (unpublished). This is the Opinion and Order that the Court modifies herein.

On May 23, 2013, Defendants MDOC, GHCF, Klee, Latta, as well as newly-identified Defendants James McNamara, Kimberly McGuire, and Beth Fritz (collectively, the "MDOC Defendants") filed an Answer to Plaintiff's Amended Complaint. (ECF No. 28.) On September 6, 2013, the MDOC Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] (ECF No. 37.) This motion is pending before the Court.

Also on September 6, 2013, Plaintiff's counsel filed a motion to withdraw, which this Court referred to Magistrate Judge Michelson pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF Nos. 35, 36.) Magistrate Judge Michelson granted the withdrawal motion on September 26, 2013, gave Plaintiff until October 28, 2013 to obtain new counsel, and extended Plaintiff's time to respond to the MDOC Defendants' Motion until November 25, 2013. (ECF No. 43.) It appears that

---

[3] Because the MDOC Defendants filed an Answer to Plaintiff's Amended Complaint, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is untimely. *See* Fed. R. Civ. P. 12(b) (explaining that motions filed pursuant to the rule "must be made before pleading if a responsive pleading is allowed"). Insofar as this Answer constitutes a "pleading" as defined by Rule 7(a)(2), the proper motion to file would be a Rule 12(c) motion for judgment on the pleadings. This technical defect is not fatal, however, as the same standard of review governs motions filed under both Rule 12(b)(6) and Rule 12(c). *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). Accordingly, the Court construes the MDOC Defendants' post-answer motion to dismiss as a motion for judgment on the pleadings.

6

Plaintiff has not been able to obtain new counsel and is now proceeding *pro se*. Plaintiff did not respond to the MDOC Defendants' Motion to Dismiss.

In the interim, the Court issued an Order to Show Cause, to which Plaintiff responded, noting that Defendants Daniel Ducatt and Paula Meyer had not been served within the timeframe provided by Federal Rule of Civil Procedure 4(m). (ECF Nos. 34, 40.)  Despite answering, Plaintiff did not show good cause for failing to serve the aforementioned defendants.  As a result, the Court entered a Partial Order of Dismissal dismissing Defendants Ducatt and Meyer without prejudice.  (9/26/13 Order, ECF No. 42.)

## II.    STANDARD OF REVIEW [4]

Federal courts review motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) using the standards applicable to motions filed under Rule 12(b)(6).  *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted).  Though litigants employ these procedural mechanisms at different stages of the proceedings, the purpose of both types of motions is to test the sufficiency of a plaintiff's pleadings.  Thus, as with Rule 12(b)(6) motions, a Rule 12(c) motion allows a court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

---

[4] See note 2, *supra*.

As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). In this regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant" is responsible for the conduct alleged in the complaint. *Id.* (citation omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does

8

not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim *showing* that the pleader is entitled to relief[.]") (emphasis added).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

## III.   ANALYSIS

### A.   Count I

In Count I, brought pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff alleges that the MDOC Defendants violated Gurly's Fourth, Eighth, and Fourteenth Amendment rights.  The Court is unable to ascertain the basis for the

Fourth Amendment claim.  Beyond the reference in the heading for Count I, no allegations regarding the Fourth Amendment are contained in the Amended Complaint and the Court, therefore, dismisses the Fourth Amendment claim. Unlike the Fourth Amendment claim, the Eighth Amendment claim figures predominately into Plaintiff's allegations.  Plaintiff contends that the MDOC Defendants displayed deliberate indifference towards Gurly's serious medical needs in violation of the Eighth Amendment.  Lastly, and with respect to the Fourteenth Amendment component of Count I, Plaintiff's Amended Complaint suggests that the MDOC Defendants' conduct resulted in the deprivation of Gurly's "liberty interest under the Constitution including: the right to receive reasonable medical treatment[.]"  (Am. Compl. ¶ 66.)  The Court does not believe that the Fourteenth Amendment claim states a claim as the Eighth Amendment provides the proper vehicle to analyze claims of inadequate medical treatment in the prison setting.  *Cf. United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 1228 n.7 (1997) (discussing *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870-71 (1989), an excessive force case, and explaining that "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of

10

substantive due process"). Accordingly, the Court addresses only Plaintiff's allegations concerning the Eighth Amendment.

### 1.    *Eleventh Amendment Defense – State Sovereign Immunity*

Before turning to the Eighth Amendment claim, the Court notes that the MDOC Defendants have raised an Eleventh Amendment sovereign immunity defense. Plaintiff's three-count Amended Complaint names twelve defendants, however, only seven are referred to herein as the MDOC Defendants: MDOC, GHCF, GHCF Warden Paul Klee, Corrections Officer Latta, Nurse Kimberly McGuire, Nurse Beth Fritz, and Nurse James McNamara. With the exception of the entity defendants (MDOC and GHCF), Plaintiff names each defendant in both their individual and official capacities. (Am. Compl. ¶ 29.)

"The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309-10 (1989)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71, 109 S. Ct. at 2312. Each of the MDOC Defendants are either state agencies or state employees and the State of Michigan has not waived its immunity nor has it consented to suit. Accordingly, Plaintiff's claims against MDOC and

11

GHCF, as well as Plaintiff's claims against the individual MDOC Defendants in their official capacities, are barred by the Eleventh Amendment. *See, e.g.*, *Sims v. Mich. Dep't of Corrs.*, 23 F. App'x 214, 215 (6th Cir. 2001) ("Because the MDOC is a state agency and the State of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity.")

### 2.   *Governing Legal Standards*

Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000). Thus, to prevail on a federal civil rights claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must establish: "'(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006))

Here, Plaintiff alleges that Gurly was deprived of his rights protected by the Eighth Amendment. The Eighth Amendment embodies "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . .,' against which [courts] must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 290 (1976) (internal citation omitted). These principles give rise to a governmental "obligation to provide medical care for those whom it is punishing

12

by incarceration." *Id.* at 103, 97 S. Ct. at 290; *see also Baker v. City of Detroit*, 217 F. App'x 491, 495 (6th Cir. 2007) (unpublished) ("The Supreme Court in *Deshaney* [*v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005 (1989)] recognized a line of cases 'stand[ing] . . . for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'"). Such an obligation arises because inmates "must rely on prison authorities to treat [their] medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290. Even in non-life-threatening cases, "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.*

To sustain a § 1983 claim arising from the Eighth Amendment's prohibition against cruel and unusual punishment and based on inadequate medical treatment, Plaintiff must demonstrate that the MDOC Defendants acted with deliberate indifference to Gurly's serious medical needs in diagnosing or treating him. *See, e.g.*, *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Deliberate indifference claims consist of two components, one objective and the other subjective. "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component

13

'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). The objective component requires proof that "a substantial risk to [the prisoner's] health or safety existed." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 571 (6th Cir. 2013). The subjective component requires proof that (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the [prisoner]," (2) the official "did in fact draw that inference," and (3) the official "then disregarded that risk." *Quigley*, 707 F.3d at 681 (internal quotations omitted).

While deliberate indifference entails something more than mere negligence or even gross negligence, the standard is satisfied by something less than acts or omissions for the purpose of causing harm or with knowledge that harm will result. *Farmer v. Brennan*, 511 U.S. 825, 835-36, 114 S. Ct. 1970, 1978 (1994); *see also Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003). In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm[.]" *Wright*, 79 F. App'x at 831 (citation omitted); *accord Farmer*, 511 U.S. at 836-38, 114 S. Ct. at 1978-79 (equating "deliberate indifference" to the "recklessness" standard under criminal, not civil, law).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

14

guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  The Sixth Circuit acknowledges that "[a] claim of inadequate medical treatment[,]" as opposed to a claim of a complete denial of medical treatment, "may state a constitutional claim" but cautions that such claims are generally limited to situations where "the treatment rendered is 'so woefully inadequate as to amount to no treatment at all.'" *Clark v. Corrs. Corp. of Am.*, 98 F. App'x 413, 416 (unpublished) (citing *Westlake*, 537 F.2d at 860-61).

### 3.    *Application*

In this case, the Court is willing to assume that Plaintiff has satisfied the objective component by showing that Gurly's condition was "sufficiently serious." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977.  However, Plaintiff has not sufficiently pleaded facts concerning the subjective component of a deliberate indifference claim.  While it is true that Plaintiff alleges that the healthcare staff "had specific knowledge of Gurly's serious medical needs based on verbal communication from Gurly," (Am. Compl. ¶ 65), other than providing each Defendant's specific title and indicating in what capacity each is being sued, "Plaintiff fails to attribute any specific factual allegations to any of the MDOC Defendants individually and instead refers to all Defendants generally as a group[,]" (MDOC Defs.' Br. 9).  Although this case involves the adequacy of

15

medical treatment, this fact alone does not mean that Plaintiff has stated a viable claim against nurses McGuire, Fritz, and McNamara (presumably the medical staff who saw Gurly) or corrections officer Latta (who may or may not have been working when Gurly became ill). Without providing specific factual allegations illustrating how each specific MDOC Defendant violated Gurly's Eighth Amendment rights, Plaintiff has failed to "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. In other words, the allegations in Plaintiff's Amended Complaint give rise to a possibility that someone acted improperly in connection with Gurly's medical treatment but "a complaint plead[ing] facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). Plaintiff's failure to allege how any Defendant was personally involved and deliberately indifferent means that the Amended Complaint does not contain "factual content that allows the court to draw the reasonable inference that the [MDOC D]efendant[s are] liable for the misconduct alleged[.]"[5] *Id.* at 678, 129 S. Ct. at 1950; *Ridgeway v. Kentucky*, 510 F. App'x 412, 413 (6th Cir. 2013) (unpublished) (per curiam) (citation omitted).

---

[5] The Court's findings with respect to Plaintiff's failure to allege any conduct tending to show that any of the MDOC Defendants violated Gurly's

The dearth of factual enhancement is particularly problematic with respect to Defendant Klee, the GHCF Warden, who is presumably being sued in a supervisory capacity.  "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).  "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Plaintiff has not alleged that Klee committed any actual acts, nor has Plaintiff averred that Klee acquiesced in the conduct of his employees.  *Cf. Iqbal*, 556 U.S. at 676, 129 S. Ct at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

Lastly, to the extent Plaintiff alleges claims challenging the adequacy of training and/or medical procedures pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), these also fail.  It is well-settled that liability cannot arise under *Monell* without an underlying unconstitutional act.  *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).  Although possible that one or more of the MDOC Defendants acted in contravention to the Eighth

---

Eighth Amendment rights precludes the necessity of addressing the MDOC Defendants' arguments regarding the doctrine of qualified immunity.

Amendment, the failure to tie any specific Defendant to the plausibly pled unconstitutional act means that the *Monell* claim does not survive dismissal.

That Plaintiff's Amended Complaint does not sufficiently tie any Defendant to Gurly's death is not the end of this Court's analysis. This is because upon construing the factual allegations in the light most favorable to Plaintiff, the Amended Complaint does contain allegations plausibly suggesting that the health care staff's treatment of Gurly – both the nurses and the previously dismissed Non-MDOC Defendants (who are either doctors or physicians assistants) – was tantamount to deliberate indifference as opposed to being merely negligent or grossly negligent.[6] Specifically, the Amended Complaint alleges that Gurly visited the healthcare facility on August 3, 2011, and that the "healthcare staff, without an examination, prescribed him cholesterol medicine[.]" (Am. Compl. ¶ 39.) This medication only exacerbated Gurly's pain, so he once again sought medical attention. (*Id.* at ¶ 40.) Although unclear when Gurly returned to the healthcare facility for further evaluation, when he returned, "the healthcare staff and Defendant GH[CF] failed and/or refused to properly medically treat Plaintiff-

---

[6] "[A] complaint that [medical personnel have] been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999); *see also Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (indicating that even if treatment is furnished "carelessly or inefficaciously," such treatment does not mean the medical provider "displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation").

Decedent but instead, told him to return to his cell and ordered" that he "stay in bed." (*Id.* at ¶ 42.) Gurly's condition continued to deteriorate and he "wrote several medical request forms ('kites') and complaints stating that his abdominal pain had not abated and that he needed extensive medical treatment; however, the Defendants failed and refused to provide adequate medical treatment." (*Id.* at ¶ 46.) In the early morning hours of August 6, 2012, GHCF staff found Gurly deceased in his cell. (*Id.* at ¶ 47; Defs.' Answer to Pl.'s Am. Compl. ¶ 47.[7])

Construing these allegations as true, the conduct of the healthcare staff in prescribing Gurly cholesterol medication without an examination on August 3, 2011 raises serious question as to the adequacy of the treatment Gurly received. The same is true of the allegation that the healthcare staff failed to furnish any treatment upon Gurly's return to the clinic. That Gurly died three days after his August 3 examination suggests that this is a case where the "treatment rendered [was] 'so woefully inadequate as to amount to no treatment at all.'" *Clark*, 98 F. App'x at 416 (unpublished) (citing *Westlake*, 537 F.2d at 860-61).

The three previously dismissed Non-MDOC Defendants – Defendants Prasad, Jindahl, and Kakan – were dismissed on the basis of Plaintiff's failure to allege specific conduct on their part. While dismissal on this ground is still proper,

---

[7] In the Answer to Plaintiff's Amended Complaint, the MDOC Defendants indicate that Gurly was seen by medical staff on August 5, 2012. (MDOC Defs.' Answer to Pl.'s Am. Compl. ¶ 42, ECF No. 28.)

the Court *sua sponte* revisits its decision to dismiss Plaintiff's Amended Complaint

against them with prejudice.[8]   Proper resolution of this case – whether ultimately in

favor of Defendants or Plaintiff – requires that all medical personnel involved in

Gurly's treatment (or lack thereof) be before the Court.   This is particularly true

with regard to those Defendants who had the authority to prescribe the cholesterol

---

[8] The authority for the Court's decision to proceed in such a fashion is set forth in *Leelanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 F. App'x 942 (6th Cir. 2004) (unpublished).   In that case, the Sixth Circuit held that the district court had authority to vacate its earlier order granting partial summary judgment and an injunction.   *Id.* at 943-44.   In so holding, the panel cited Federal Rule of Civil Procedure 54(b), which provides, in pertinent part:

> Judgment Upon Multiple Claims or Involving Multiple Parties.   When more than one claim for relief is presented in an action, … or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.   In the absence of such determination and direction, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).   Because the Court never entered judgment in favor of the Non-MDOC Defendants, the Court is well within its authority to reconsider its prior Opinion and Order.   As the Sixth Circuit has observed, "District courts have inherent power to consider interlocutory orders and reopen any part of a case before entry of a final judgment.   A district court may modify, or even rescind, such interlocutory orders." *Leelanau Wine Cellars*, 118 F. App'x at 945 (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (additional citations omitted).

medication and those who were apprised of Gurly's symptoms but failed to examine him.

For all of the reasons set forth above, the Court dismisses Count I of Plaintiff's Amended Complaint but does so without prejudice.

**B.      State Law Claims (Counts II and III)**

Instead of seeking outright dismissal of Counts II ("Gross Negligence") and III ("Acting in Concert"), the MDOC Defendants ask this Court to decline to exercise supplemental jurisdiction because "claims raising issues of state law are best left to a determination by the state courts, particularly in the area of prison administration." (MDOC Defs.' Br. 17 (citations omitted).)

Title 28 U.S.C. § 1367 provides that "district courts may declines to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). In *Carlsbad Technologies, Inc. v. HIF Bio, Inc.*, the Supreme Court emphasized that once a district court has dismissed all claims over which it possessed independent jurisdiction, the decision regarding whether to exercise supplemental jurisdiction over remaining state-law claims is "purely discretionary." 556 U.S. 635, 639-40, 129 S. Ct. 1862, 1866-67 (2009). In deciding whether to retain jurisdiction over state-law claims, a district court should engage in a multi-factor balancing test considering the "values of judicial economy, convenience, fairness, and comity."

21

*Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010)

(citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619

(1988)).  Of particular consequence in this case, when a district court dismisses all

claims over which it had original jurisdiction, the balance of considerations is

likely to weigh in favor of declining to exercise supplemental jurisdiction.  *Gamel*,

625 F.3d at 952 (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244,

1254-1255 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the

balance of considerations usually will point to dismissing the state law claims, or

remanding them to state court if the action was removed.")).

      Having dismissed the sole claim over which it had original jurisdiction

pursuant to Federal Rule of Civil Procedure 12(c), the Court believes that dismissal

of the remaining counts without prejudice is the proper course of action.

## IV.   CONCLUSION AND ORDER

      For the reasons stated herein, the Court concludes that Plaintiff's Amended

Complaint fails to state an actionable § 1983 claim against the MDOC Defendants.

Consistent with its prior Opinion and Order, the Court believes that the same is

true of the allegations against the Non-MDOC Defendants.   Dismissal of

Plaintiff's Amended Complaint is therefore required.  Given the adverse

consequences if the dismissal is with made with prejudice, however, the Court

modifies its July 24, 2013 Opinion and Order to vacate the portion of the Order

dismissing Plaintiff's Amended Complaint against the Non-MDOC Defendants with prejudice. The Court believes that Plaintiff should be given an opportunity to cure the pleading deficiencies by providing greater factual enhancement as to what role each Defendant played in the underlying incident. This belief is rooted in the Court's opinion that "justice so requires[]" affording Plaintiff an opportunity to amend. Fed. R. Civ. P. 15(a)(2). Because Plaintiff is already in possession of certain medical records (the same records that allowed Plaintiff to identify the John Doe defendants), the Court believes that amendments may be made. Should Plaintiff choose to file a second amended complaint that comports with federal pleading standards, Plaintiff must do so within twenty-one (21) days of receipt of this Opinion and Order.

Accordingly,

**IT IS ORDERED** that the MDOC Defendants' Motion to Dismiss is **GRANTED** and that Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that this Court **MODIFIES AND VACATES** its July 24, 2013 Opinion and Order dismissing the Non-MDOC Defendants (Defendants Prasad, Jindahl, and Kakan) with prejudice and herein **ORDERS** that these defendants are **DISMISSED WITHOUT PREJUDICE**;

23

**IT IS FURTHER ORDERED** that Plaintiff has **TWENTY-ONE (21)**

**DAYS** from receipt of this Opinion and Order to **FILE A SECOND AMENDED**

**COMPLAINT** curing the deficiencies described herein.

Dated:  April 1, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Marium Merritt Ruth**
52 Elm Street
River Rouge, MI 48218

**A. Peter Govorchin, A.A.G.**
**Cori E. Barkman, A.A.G.**
**Carly A. Van Thomme, Esq.**
**Ronald W. Chapman, Esq.**